IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CAROL K. GHAUL ) | Civil Action No. 7:16-cv-00497 |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security ) | |
| ) | By: Hon. Glen E. Conrad |
| Defendant. ) | United States District Judge |

The plaintiff, Carol K. Ghaul, filed this action challenging certain provisions of the final decision of the Commissioner of Social Security, denying her application for disability insurance benefits ("DIB") and establishing a period of disability for purposes of her application for supplemental security income benefits ("SSI") pursuant to the Social Security Act ("the Act"), as amended, 42 U.S.C. § 401 et seq., and 42 U.S.C. § 1381 et seq., respectively. Stated succinctly, plaintiff challenges the disability onset date established by the Commissioner. For the reasons that follow, the court will affirm the Commissioner's final decision.

**Standard of Review**

The Social Security Administration is authorized to award DIB and SSI benefits to persons who are deemed to be "disabled" from all forms of substantial gainful employment. Barnhart v. Thomas, 540 U.S. 20, 21 (2003). A claimant is considered "disabled," and thus, potentially eligible to receive DIB and/or SSI benefits, if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Upon review, this court must affirm the disability determination of an Administrative Law Judge ("ALJ") if it is supported by substantial evidence and the ALJ applied the correct legal standards. Lewis v. Berryhill, 858 F.3d 858, 865 (4th Cir. 2017). Stated briefly, substantial evidence has been characterized as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

To determine whether a claimant is disabled for both DIB and SSI purposes, the ALJ applies a five-step sequential evaluation process, which assesses "whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to [her] past relevant work; and if not, (5) whether [she] can perform other work." Nelson v. Berryhill, No. 7:15-cv-573, 2017 U.S. Dist. LEXIS 27840, at *3 n.5 (W.D. Va. Feb. 28, 2017) (citing Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam)); see also 20 C.F.R. §§ 1520(a)(4); 416.920(a)(4). "The claimant bears the burden to make the requisite showing during the first four steps." Lewis, 858 F.3d at 861 (internal citation omitted). Notably, "[i]f the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ('RFC') before proceeding to step four." Id. If the claimant meets her burden under the first four steps, then the burden shifts to the Commissioner at step five. Id. If the claimant is determined to be disabled, the ALJ must then establish the onset date of disability. Social Security Ruling ("SSR") 83-20, 1983 SSR LEXIS 25 at *2.

Ultimately, the crucial factual determination is whether the claimant is disabled from all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof that must be considered in making such a determination. These elements are summarized as

2

follows: objective medical facts and clinical findings; the opinions and conclusions of treating physicians; subjective evidence of physical manifestations of impairments, as described through the claimant's testimony; and the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962). Accordingly, when assessing whether substantial evidence supports a disability determination, the reviewing court "must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and rationale in crediting the evidence." Turner v. Astrue, No. 2:08cv0006, 2008 U.S. Dist. LEXIS 88453, at *39-40 (W.D. Va. Oct. 21, 2008) (citing Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997)).

Finally, the court emphasizes that the ALJ is uniquely tasked with resolving discrepancies in the record and making credibility determinations. See Felton-Miller v. Astrue, 459 Fed. App'x 226, 228 (4th Cir. 2011). Therefore, even when "conflicting evidence allows reasonable minds to differ," this court must give great deference to the ALJ's assessment of recorded discrepancies and the credibility of the claimant's allegations as long as the ALJ's determination is supported somewhere in the record. See id. (internal quotation marks omitted).

### Background & Procedural History

Ms. Ghaul was born on December 24, 1967. (Tr. 64.) After earning her GED, she worked as a roof truss builder, saw operator, and pin drafter machine operator. (Tr. 73.) Aside from two temporary positions that each lasted about a month, Ms. Ghaul has remained unemployed since her employer's company shut down in 2008. (See Tr. 20, 47-48.) Ms. Ghaul filed for DIB on August 15, 2013 (Tr. 211), and SSI on September 6, 2013 (Tr. 213). In both applications, Ms. Ghaul alleged that she became disabled beginning February 10, 2012, due to pain in her neck, back, knees, and feet; arthritis in her back; depression; anxiety; and past suicide attempts. (Tr. 64, 88.) As to her

application for DIB, the record reveals that Ms. Ghaul met the insured status requirements of the Act through March 31, 2015. See 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101(a), 404.131(a). Accordingly, Ms. Ghaul is only eligible for DIB if she has established that she became disabled from all forms of substantial gainful employment on or before March 31, 2015.

Ms. Ghaul's applications were both denied initially and upon reconsideration. (Tr. 13.) Thereafter, Ms. Ghaul requested a hearing before an ALJ, which was subsequently held on October 7, 2015. (Tr. 13.) On December 15, 2015, the ALJ issued a partially favorable opinion concluding that Ms. Ghaul was able to perform a limited range of light work until a motorcycle accident rendered her disabled on August 25, 2015. (Tr. 30.) Consequently, Ms. Ghaul was found to be disabled for purposes of her claim for SSI benefits, beginning on August 25, 2015. (See Tr. 31.) Additionally, based on the conclusion that Ms. Ghaul failed to prove that she became disabled from all forms of substantial gainful employment on or before March 31, 2015, the ALJ completely denied Ms. Ghaul's DIB claim. (See Tr. 31.) The ALJ's partially favorable opinion was subsequently adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Ghaul appeals to this court pursuant to 42 U.S.C. § 405(g).

## Discussion

Stated succinctly, the ALJ found that Ms. Ghaul did not become disabled until experiencing physical injuries in a motorcycle crash, which occurred on August 25, 2015. The ALJ stated as follows:

> In reaching this conclusion, I find that beginning August 25, 2015, [Ms. Ghaul's] allegations regarding her symptoms and limitations are generally credible. On this date, [Ghaul] was involved in a motorcycle crash as a passenger. She presented to the emergency room for complaints [of] pain. Imaging confirmed fractures in the right forearm, wrist, and ankle, as well as [factures in] several lumbar

4

discs and the right side of the pelvis. [Ghaul] required multiple surgeries and was hospitalized until September 2, 2015. [Ghaul] was then sent for inpatient rehabilitation. When discharged on September 12, 2015, it was noted that though stable, [Ghaul] continued to experience posttraumatic and postoperative pain. [Ghaul] has continued to follow up with her orthopedist. While signs of healing have been noted, [Ms. Ghaul's] current complaints of pain and the need to rest are supported by the severe polytraumas incurred in the motorcycle accident. Given the nature of her injuries, it is likely that these limitations would continue for at least a year.

(Tr. 28.)

## Sequential Disability Evaluation

The court believes that in determining that Ms. Ghaul was not disabled prior to August 25, 2015, the ALJ properly applied the sequential disability evaluation. With regard to the first step of the sequential evaluation process, the ALJ found that Ms. Ghaul has not engaged in substantial gainful activity since her alleged onset date of February 10, 2012. (Tr. 15.) At the second step, the ALJ decided that prior to the established onset date of August 25, 2015, Ms. Ghaul "had the following severe impairments: degenerative disc disease of the cervical and lumbar spines and medical meniscus tear status post repair." (Tr. 16.) Additionally, the ALJ classified Ms. Ghaul's "medically determinable mental impairments of depression and substance addiction"[1] as non-severe. (Tr. 16.) With regard to the third step, since her alleged onset date of February 10, 2012, none of Ms. Ghaul's impairments or a combination thereof met or was the medical equivalent of one of the listed impairments. (Tr. 16.) Before proceeding to the next step, the ALJ concluded that, prior to the established onset date, Ms. Ghaul had the RFC to perform light work. (See Tr. 18.) At the fourth step, the ALJ found that Ms. Ghaul could perform her past relevant work as a roof truss

---

[1] After recognizing Ms. Ghaul's history of substance abuse, the ALJ did not consider this problem to be material to the issue of her disability status as Ghaul "ceased all drug and alcohol use as of the established onset date" of disability, August 25, 2015. (Tr. 31); see also Seymour v. Berryhill, No. 3:16cv00062, 2017 U.S. Dist. LEXIS 31517, at *3 (W.D. Va. March 6, 2017) (Conrad, C.J.) (similarly noting that the ALJ recognized the claimant's "history of episodic alcohol abuse" but "did not consider this problem to be material to the issue of disability").

machine operator prior to the established onset date. (Tr. 28.) Since Ms. Ghaul was capable of performing her past relevant work, the ALJ concluded that Ms. Ghaul was not disabled prior to August 25, 2015.[2] (Tr. 29.) Accordingly, as she was unable to prove that she became disabled from all forms of substantial gainful employment on or before March 31, 2015 (i.e., the date she last enjoyed her requisite insured status), the ALJ denied Ms. Ghaul's DIB claim. (See Tr. 31.) The ALJ found that Ms. Ghaul was not entitled to a period of disability for purposes of her SSI claim until August 25, 2015.

Amongst the issues before the court, Ms. Ghaul contests the ALJ's step two and RFC determinations. Regarding the ALJ's step two analysis, Ms. Ghaul argues that the ALJ erred in classifying her depression as non-severe. Ms. Ghaul further contends that the ALJ's RFC is unsupported by substantial evidence because the ALJ erroneously failed to conduct a comprehensive function-by-function analysis and properly assess the credibility of Ms. Ghaul's subjective evidence. The court addresses these arguments in turn and concludes that the ALJ's findings are supported by substantial evidence in the record.

### Substantial evidence supports classifying Ms. Ghaul's depression as non-severe

Ms. Ghaul first contests the ALJ's finding that her depression was non-severe. Before reviewing the ALJ's step two analysis, however, the court first highlights that the record conspicuously omits evidence showing that Ms. Ghaul received any meaningful and continuous psychological treatment. More specifically, the medical records before the court only reference Ms. Ghaul's psychological treatment in three instances, including her receipt of "mental health support services" from The Phoenix Center (Tr. at 268; see also Tr. 24, 804, 816-27); Ms. Ghaul's

---

[2] Even though the ALJ recognized that it was unnecessary to proceed to the fifth step, the ALJ nonetheless noted that "[p]rior to August 25, 2015, considering [Ghaul]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed in addition to her past relevant work." (Tr. 29.)

weeklong hospitalization, which occurred subsequent to her debatable suicide attempt on March 27, 2012 (see Tr. 20-21, 327-369, 417-41); and Ms. Ghaul's four office visits to the Center for Emotional Care between July 19–October 30, 2013 (see Tr. 23-24, 785-97). As these instances are relevant to the ALJ's classification of Ms. Ghaul's depression as non-severe, the following summarizes the applicable medical records.

First, with regard to the "mental health support services" that Ms. Ghaul received from The Phoenix Center, the ALJ noted: "[i]n a letter dated, November 3, 2013, Drs. Rochelle Potter and [Ashley] Callahan stated that [Ghaul] began receiving treatment at The Phoenix Center since December 26, 2012; however, no treatment notes were provided. An individual treatment plan from December 26, 2013, was later provide[d]. Again, however, no mental status examinations were included." (Tr. 24 (internal citations omitted).) Since the record excludes documentation of the treatment she received from The Phoenix Center, neither the ALJ nor this court could assess Ms. Ghaul's alleged treatment with this facility. However, based on Ms. Ghaul's response in her Disability Report Appeal Form, dated January 27, 2014 (see Tr. 267-72), it is unclear whether The Phoenix Center actually provided psychological treatment. Ms. Ghaul stated that she "receive[d] mental health support services" from The Phoenix Center, but she described these services to include coordinating her medical care, transporting her to her appointments, and "get[ting] [her] out of [her] house." (Tr. 269, 287.)

With regard to her weeklong hospitalization, the court believes that the ALJ justifiably questioned the events leading up to Ms. Ghaul's hospitalization. When she applied for DIB and SSI benefits, Ms. Ghaul claimed that she attempted to commit suicide three times. One of those attempts allegedly resulted in her weeklong hospitalization, beginning March 27, 2012. (See Tr. 21, 251.) However, the ALJ recognized that while Ms. Ghaul's hospital records contain some

7

conflicting evidence (see, e.g., Tr. 21, 349-50, 439), most of her hospital physicians documented that Ms. Ghaul adamantly denied ever attempting to commit suicide (see, e.g., Tr. 21, 352, 354-55, 366, 369, 417-18, 420, 423, 431, 438). More specifically, Ms. Ghaul's weeklong hospitalization initiated on March 27, 2012, when she was found unresponsive and lying next to prescription bottles. (See Tr. 417.) Ms. Ghaul justified her condition to one of her treating physicians by explaining that she took "her typical dose of Lortab and Flexeril, but she had been drinking as well and she does not think that she made a suicide attempt." (Tr. 417.) Her hospital records also evidenced that Ms. Ghaul was "found to be positive for cocaine and benzodiazepenes in the [Emergency Room]" (Tr. 338); that Ms. Ghaul claimed that she only "felt depressed 'a little bit'" (Tr. 21, 417, 420); and that Ms. Ghaul demanded to be discharged, refused patient care, and pushed a hospital staffer after she was not allowed to go into the hospital waiting room (see Tr. 21, 350).

Finally, given the limited record before the court, it appears that Ms. Ghaul received her most significant and continuous psychological treatment when she visited the Center for Emotional Care four times between July 19–October 30, 2013. (See Tr. 23-24, 785-97.) Although the Center for Emotional Care listed Ms. Ghaul's diagnosis as "major depressive disorder," her treatment provider, Molly B. Sharp, P.A., noted that throughout her four office visits, Ms. Ghaul was not suicidal or homicidal and had no reports of hallucinations or delusions. (See Tr. 786, 789, 793.) Rather, during each visit, Ms. Sharp noted that Ms. Ghaul had fair judgment, good attention, and concentration; she was cooperative, alert, and thinking coherently and in a goal-oriented manner; and Ms. Ghaul's recent and remote memory was intact. (See Tr. 786, 789-90, 793, 796.) Additionally, Ms. Ghaul testified on October 7, 2015, that she believed that the limited counseling therapy she received was helpful (see Tr. 57), and she was on a waiting list to receive further mental health treatment and medication (see Tr. 20, 46).

With Ms. Ghaul's above-mentioned psychological treatment in mind, the court turns to the ALJ's step two analysis to assess whether substantial evidence supports the ALJ's classification of Ms. Ghaul's depression as non-severe. The regulations state that an impairment "is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). With regard to the claimant's mental functioning, "basic work activities" include the claimant's capacity to "understand[], carr[y] out, and remember[] simple instructions; us[e] judgment; respond[] appropriately to supervision, co-workers and usual work situations; and deal[] with changes in a routine work setting." Id. § 404.1521(b)(2)-(6). Although "[t]his is not a difficult hurdle for the applicant to clear," the court "must affirm the ALJ's severity finding if she applied the correct legal standard and if her conclusion is supported by substantial evidence in the record." Jefferson v. Colvin, No.4:15-cv-1, 2016 U.S. Dist. LEXIS 82798, at *30 (W.D. Va. June 24, 2016) (internal citations omitted).

In the instant case, the ALJ found that Ms. Ghaul suffered from the medically determinable mental impairment of depression, but concluded that this impairment "d[id] not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and [is] therefore nonsevere." (Tr. 16.) In assessing the severity of Ms. Ghaul's depression, the ALJ properly "considered the four broad functional areas set out in the disability regulations for evaluating mental disorders," including the functional impact that Ms. Ghaul's depression has had on her (1) activities of daily living, (2) social functioning, and (3) concentration, persistence, and pace; and whether her depression resulted in (4) episodes of decompensation. (Tr. 16-17.) The ALJ determined that Ms. Ghaul's depression caused mild limitations in the first three functional areas and no episodes of decompensation. (Tr. 16-17.)

Pursuant to the disability regulations, findings of "mild" limitations in the first three functional areas and no episodes of decomposition warrant classifying a mental impairment as non-severe. See 20 C.F.R. § 1520a(d)(1). Therefore, the ALJ properly classified Ms. Ghaul's depression as non-severe if substantial evidence supports the ALJ's findings regarding these four areas of functional limitations. Applying these rules, the court concludes that the ALJ properly identified Ms. Ghaul's depression as non-severe[3] as the ALJ's findings regarding these four functional areas are properly supported by substantial evidence in the record.

As a threshold matter, the court highlights the directly supportive opinions of the Disability Determination Services' ("DDS") two psychological consultants[4] and two physicians.[5] (See Tr. 75-85, 88-100.) The ALJ credited "great weight" to these four DDS opinions as they "are consistent with the record as a whole." (Tr. 27.) Markedly, the ALJ noted that the DDS opinions also provided the only formal interpretation of Ms. Ghaul's functional ability since none of her treatment providers "offered any formal opinions on [Ms. Ghaul's] behalf." (Tr. 26.)

With regard to Ms. Ghaul's depression and mental limitations, the two opinions of the DDS psychological consultants identically mirror the ALJ's overall conclusions that Ms. Ghaul's non-severe depression resulted in only mild functional limitations and no episodes of decompensation. (See Tr. 81, 95-96.) Additionally, one of the DDS physicians concluded that despite Ms. Ghaul's allegations of depression and anxiety, "the medical evidence does not show that [Ms. Ghaul's]

---

[3] As Ghaul does not claim that the ALJ applied the incorrect legal standard when assessing the severity of her depression, the court's review is limited to assessing whether there is substantial evidence in the record to support the ALJ's classification of Ms. Ghaul's depression as non-severe.

[4] With regard to her DIB claim, Ms. Ghaul's initial DDS psychological opinion was prepared by Howard S. Leizer, Ph.D., on December 2, 2013. (Tr. 81.) When Ms. Ghaul's DIB claim was reconsidered, her subsequent DDS psychological assessment was conducted by Sandra Francis, Psy.D., on March 6, 2014. (Tr. 96.)

[5] Also with regard to her DIB claim, Ms. Ghaul's initial DDS physician opinion was prepared by Thomas M. Phillips, M.D., on December 2, 2013. (Tr. 84.) When Ms. Ghaul's DIB claim was reconsidered, her subsequent DDS physician opinion was prepared by James Darden, M.D., on March 6, 2014. (Tr. 100.)

condition has significantly affected [her] ability to understand, remember, cooperate with others, or perform normal daily activities." (Tr. 85.)

In addition to these generally supportive DDS opinions, the ALJ's specific findings regarding the four, requisite areas of functional limitations are best evidenced by Ms. Ghaul's handwritten responses in her two Function Reports—dated October 31, 2013 (see Tr. 259-66); and February 25, 2014 (see Tr. 277-84). Thus, for the reasons that follow, the court will affirm the ALJ's classification of Ms. Ghaul's depression as non-severe as the ALJ's requisite findings regarding the four areas of functional limitations are amply supported by evidence in the record.

> i. *Substantial evidence supports the ALJ's finding that Ms. Ghaul's depression mildly limits her activities of daily living*

"Activities of daily living" include "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 12.00(C)(1). The ALJ assesses "the quality of these activities by their independence, appropriateness, effectiveness, and sustainability . . . [and] will determine the extent to which [the claimant] [is] capable of initiating and participating in activities independent of supervision or direction." Id. Here, the ALJ concluded that Ms. Ghaul's activities of daily life were only mildly limited because Ms. Ghaul "reported that she could take care of her personal needs, manage her medication, perform light housework, and prepare simple meals." (Tr. 16.) The court believes that this determination is consistent with the recorded evidence. (See Tr. 259-62, 277-78.) Accordingly, the ALJ's finding of a mild limitation regarding Ms. Ghaul's activities of daily living is supported by substantial evidence in the record.

*ii.*      *Substantial evidence supports the ALJ's finding that Ms. Ghaul's depression mildly limits her social functioning*

"Social functioning" refers to the claimant's "social maturity" and "ability to get along with others . . . [and] respond[] appropriately to persons in authority (e.g., supervisors)." 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 12.00(C)(2). For example, evidence that the claimant initiates social contacts, communicates clearly, and actively participates in group activities "may exhibit strength in social functioning." Id. Conversely, the claimant may have impaired social functioning if she has a "history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation." Id. Here, the ALJ found only mild limitations with regard to Ms. Ghaul's ability to function socially because, although Ms. Ghaul "later complained of irritability secondary to pain," she "initially denied any problems getting along with family, friends, . . . neighbors . . . [or] authority figures." (Tr. 17.) Additionally, Ms. Ghaul "has received minimal mental health treatment," and she "stated that she had never been fired due to interpersonal problems." (Tr. 17.) The court believes these findings are similarly supported by evidence in the record (see Tr. 262-63, 265, 281-83) and Ms. Ghaul's testimony (see Tr. 51). Thus, the ALJ's determination that Ms. Ghaul's social function is mildly limited is supported by substantial evidence in the record.

*iii.*      *Substantial evidence supports the ALJ's finding that Ms. Ghaul's depression mildly limits her concentration, persistence, and pace*

"Concentration, persistence, or pace" refers to the claimant's "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 12.00(C)(3). "Limitations in concentration, persistence, or pace are best observed in work settings," but "major limitations in this area can often be assessed through clinical examination or

12

psychological testing." Id. Here, the ALJ determined that despite Ms. Ghaul's depression, she only suffered from mild limitations of concentration, persistence, and pace. (Tr. 17.) In making this determination, the ALJ provided the following rationale:

> Again, [Ghaul] initially denied problems with paying attention, finishing what she started, or following instructions, also denying any issues handling stress or changes in routine. She later alleged that she [was] limited in terms of paying attention, finishing what she started, and handling stress. While limited treatment records confirm a depressed mood, no deficits were noted in memory, attention, or concentration. As detailed below, psychiatric examinations by other treatment providers were generally unremarkable. Based on the above, I find the claimant has no more than a mild limitation [of concentration, persistence, or pace].

(Tr. 17 (internal citations omitted).) The court concludes that ample recorded evidence supports this finding. (See Tr. 264-65.) Markedly, Ms. Ghaul's records from Center for Emotional Care repeatedly noted that Ms. Ghaul had fair judgment, good attention, and concentration; she was cooperative, alert, and thinking coherently and in a goal-oriented manner; and her recent and remote memory was intact. (See Tr. 786, 789-90, 793, 796.) Additionally, during Ms. Ghaul's weeklong hospitalization beginning March 27, 2012, most of Ms. Ghaul's treatment providers documented that she was alert and had good or fair concentration (see, e.g., Tr. 417-18, 421, 424, 426, 430), or that she expressly denied "any trouble with concentration" (Tr. 423). Thus, the ALJ's finding that Ms. Ghaul's depression mildly limited her concentration, persistence, and pace is well supported.

> iv. *Substantial evidence supports the ALJ's finding that Ms. Ghaul's depression resulted in no episodes of decompensation*

"Episodes of decompensation" are "temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). These episodes "may be inferred from

medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household)." Id. Importantly, each "episode of decompensation" must last "for at least two weeks." Id. Here, the ALJ found that Ms. Ghaul "has experienced no episodes of decompensation" as "[t]he record does not contain evidence of episodes of decompensation of extended duration." (Tr. 17 (emphasis in original).) Substantial evidence supports a finding of no episodes of decompensation because the only instance in the record that could indicate an episode of decompensation is Ms. Ghaul's one weeklong hospitalization, which occurred subsequent to her debatable suicide attempt on March 27, 2012. (See Tr. 20-21, 327-369, 417-41.) However, since Ms. Ghaul was admitted on March 27, 2012, and discharged on April 3, 2012 (see Tr. 417), her weeklong hospitalization does not satisfy the requirement that each episode of decompensation must last for at least two weeks. Thus, the ALJ's finding of no episodes of decompensation is supported by the record.

In sum, substantial evidence supports the ALJ's findings regarding the four areas of functional limitations. Thus, the ALJ properly classified Ms. Ghaul's depression as non-severe.

### Substantial evidence supports Law Judge's finding as to Ms. Ghaul's RFC

Ms. Ghaul also maintains that the ALJ's RFC determination is not supported by substantial evidence. A claimant's RFC is the most the claimant can do despite her physical or mental limitations. Lewis, 858 F.3d at 861 (citing 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). "The process for assessing [a claimant's] RFC is set out in Social Security Ruling 96-8p, 1996 SSR LEXIS 5. Under that ruling, the assessment must first identify the individual's functional limitations or restrictions and assess her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Monroe v. Colvin, 826 F.3d 176, 187 (4th Cir.

14

2016) (internal citations and quotation marks omitted). "When assessing the claimant's RFC, the ALJ must examine 'all of [the claimant's] medically determinable impairments of which [the ALJ] is aware.'" Lewis, 858 F.3d at 862 (quoting 20 C.F.R. §§ 404.1525(a)(2), 416.945(a)(2)) (alternations in original). The impairments that must be considered include "those not labeled as severe at step two." Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015). The ALJ should also assess "'all [the claimant's] symptoms, . . . and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.'" Lewis, 858 F.3d at 862 (quoting 20 C.F.R. §§ 404.1529(a), 416.929(a)) (alternations in original). In sum, the ALJ identifies a claimant's RFC by assessing all of her known, medically determinable impairments and the functional limitations (if any) that these impairments would have on her ability to perform work-related activities on a "regular and continuing basis." See 20 C.F.R. §§ 404.1545(a)-(c); 416.945(a)-(c).

In the current matter, the ALJ characterized Ms. Ghaul's RFC as follows:

> After careful consideration of the entire record, I find that prior to August 25, 2015, the date [Ghaul] became disabled, [Ghaul] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with exceptions. [Ghaul] was able to lift and carry twenty pounds frequently and ten pounds occasionally. In an eight-hour workday, she could stand and/or walk for six hours and sit for six hours. [Ghaul] could never crawl, but could occasionally crouch, kneel, stoop, bend, balance, and climb ramps, stairs, ladders, ropes, and scaffolds. She had to avoid concentrated exposure to unprotected heights and dangerous equipment.
>     In making this finding, I have considered all symptoms and the extent which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . . I have also considered the opinion evidence . . . .

(Tr. 18.) Ms. Ghaul first argues that, in determining her RFC, the ALJ failed to make specific findings regarding how two of Ms. Ghaul's medically determinable impairments functionally

impacted her physical and mental ability to work on a regular and continuing basis. More specifically, Ms. Ghaul claims that the ALJ did not properly conduct a function-by-function analysis regarding Ms. Ghaul's (1) depression and (2) need to periodically elevate her legs due to swelling. Additionally, Ms. Ghaul also argues that the ALJ (3) did not properly assess Ms. Ghaul's subjective testimony in evaluating her credibility and the weight that should be given to her allegations regarding her need to lie down during the day and inability to maintain a static work posture due to her pain and fatigue. Each of these claims will be addressed in turn.

i.    *ALJ properly omitted Ms. Ghaul's depression from her RFC*

Ms. Ghaul first asserts that the ALJ failed to account for the functional impact of her depression in determining Ms. Ghaul's RFC. As previously discussed, the ALJ properly identified Ms. Ghaul's depression as non-severe at step two of the sequential evaluation process. In assessing the severity of her depression, the ALJ further concluded that Ms. Ghaul's depression resulted in no episodes of decompensation and only mild functional limitations affecting her activities of daily living; social functioning; and concentration, persistence, and pace. Stated differently, the court believes that the evidence supports the ALJ's conclusions that Ms. Ghaul's minimal limitations do not affect or limit her performance of work-related activities for which she is otherwise physically capable. The ALJ sufficiently discussed the functional limitations of Ms. Ghaul's depression, and the record amply supports the ALJ's decision to omit references to Ms. Ghaul's depression and its mild mental limitations from her RFC. Accordingly, Ms. Ghaul's claim that the ALJ failed to account for the functional impact of her depression in her RFC lacks merit.

ii.    *ALJ properly accounted for Ms. Ghaul's claimed need to elevate her legs*

Ms. Ghaul also argues that, when determining her RFC, the ALJ failed to consider the functional limitations of Ms. Ghaul's claimed need to elevate her legs periodically due to swelling.

16

However, this argument is similarly without merit as the ALJ explicitly addressed this exact concern in her opinion. The ALJ noted:

> The undersigned recognizes that a provider at Velocity Care advised [Ghaul] to elevate her legs for an hour a day after she complained of swelling; however, the examination performed at this time only revealed trace edema. Moreover, subsequent providers, including her orthopedist and pain specialist, did not recommend the same.

(Tr. 27 (internal citations omitted).) After properly weighing the conflicting medical evidence and unambiguously discrediting Ms. Ghaul's claim, the ALJ found that it was not medically necessary for Ms. Ghaul to elevate her legs periodically during the day. As an alleged restriction that is not medically necessary would not result in a functional limitation, the ALJ properly considered and omitted Ms. Ghaul's claimed need to elevate her legs from her RFC.

### ALJ properly assessed Ms. Ghaul's credibility

Finally, Ms. Ghaul argues that the ALJ failed to properly evaluate the credibility of Ms. Ghaul's subjective claims and specifically assess her claimed need to lie down during the day and her inability to maintain a static work posture due to her alleged pain and fatigue. At the outset, the court reemphasizes that the ALJ is uniquely tasked with resolving discrepancies in the record and making credibility determinations. See Felton-Miller, 459 Fed. App'x at 228; see also Stevens v. Colvin, No. 6:14-cv-00021, 2015 U.S. Dist. LEXIS 123772, at *26 (W.D. Va. Sept. 16, 2015) (quoting Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984)) ("'Because [the ALJ] had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.'"). Therefore, the court's role is limited to reviewing for substantial evidence rather than "re-weigh[ing] conflicting evidence, mak[ing] credibility determinations, or substit[ing] [its own] judgment for that of the [ALJ]." Craig

v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Thus, the ALJ's credibility determinations "should be accepted by the reviewing court absent 'exceptional circumstances.'" Shifflett v. Colvin, No. 5:13cv00112, 2015 U.S. Dist. LEXIS 32998, at *25 (W.D. Va. March 18, 2015) (quoting Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)). "Exceptional circumstances include cases where a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." Eldeco, Inc., 132 F.3d at 1011 (citation and quotation marks omitted).

When assessing the credibility of a claimant's subjective allegations of pain or other disabling symptoms, the ALJ applies a two-step process. Lewis, 858 F.3d at 865. First, the claimant must produce "objective medical evidence showing the existence of a medial impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (emphasis, citation, and quotation marks omitted). After satisfying this threshold obligation, the claimant may then provide subjective evidence showing the intensity and persistence of her alleged pain or other symptoms to prove "the extent to which it affects her ability to work." Id. at 595 (emphasis in original). This second step requires the ALJ to assess the "credibility of the claimant's statements about symptoms and their functional effects." Lewis, 858 F.3d at 866. "Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant." Felton-Miller, 459 Fed. App'x at 229 (citing SSR 96-7p, 1996 SSR LEXIS 4).

Here, Ms. Ghaul challenges the ALJ's assessment of her credibility on two grounds. First, Ms. Ghaul claims that the ALJ erred by discrediting Ms. Ghaul's subjective allegations regarding the intensity, persistence, and limiting effects of her alleged symptoms. In so doing, Ms. Ghaul seems to argue that her subjective statements are entitled to a presumption of credibility since the

18

ALJ agreed that Ms. Ghaul satisfied the threshold requirement of proffering objective medical evidence of impairments that could reasonably cause her alleged symptoms. However, this claim is without merit as the Fourth Circuit has repeatedly rejected this exact argument. See, e.g., Felton-Miller, 459 Fed. App'x at 229 (emphasizing that "[t]he claimant's own statements regarding her pain are not afforded any presumption" in the two-step credibility determination); Smith v. Astrue, 457 Fed. App'x 326, 329 (4th Cir. 2011) (noting that the claimant is not afforded "a presumption of credibility at step two of the pain analysis based on a successful showing at step one").

Alternatively, Ms. Ghaul argues that the ALJ erred by improperly requiring Ms. Ghaul to objectively prove the intensity of her pain. Although Ms. Ghaul correctly observed that an ALJ cannot reject a claimant's subjective allegations "solely because the available objective medical evidence does not substantiate [the claimant's] statements," Lewis, 858 F.3d at 866 (20 CFR §§ 404.1529(c)(2), 416.929(c)(2)) (internal quotation marks omitted), that is not how the ALJ assessed Ms. Ghaul's credibility. Rather than relying solely on available objective medical evidence, the ALJ attacked Ms. Ghaul's credibility by highlighting many of the inconsistencies within her own testimony and between Ms. Ghaul's claims and her medical records.

First, with regard to the discrepancies within Ms. Ghaul's own statements, the ALJ noted that Ms. Ghaul initially "stated that she stopped working in 2008 because she could not sit or stand for the necessary periods," but Ms. Ghaul later "admitted that she stopped working because the company [she worked for] shut down." (Tr. 20; see also Tr. 48, 211, 246.) Further, the ALJ explicitly emphasized Ms. Ghaul's inconsistent statements when summarizing portions of her allegations and testimony. For example, the ALJ noted:

> While alleging that she could not sit for more than twenty minutes, [Ghaul] reported that she watched television, played games on the internet, and sewed as hobbies. [Ghaul] reported that she spent time with her children and other family members daily. While denying

> any social activities outside of home, the claimant also denied any
> problems getting along with family, friends, and neighbors. . . . She
> stated that she had problems with paying attention, finishing what she
> started, or following instructions. . . . [Ghaul] later alleged that she
> had issues getting along with others because she was easily
> aggravated due to her physical conditions . . . [and] that she was not
> limited in terms of paying attention, finishing what she started, and
> handling stress.

(Tr. 19-20 (internal citation omitted); see also Tr. 51.)

Moreover, with regard to the inconsistencies between Ms. Ghaul's claims and her medical

records, the ALJ found it "interesting[]" that Carilion Internal Medicine documented that Ms. Ghaul

"was discharged for violating her pain contract, [yet she] stated that she ceased care because they

wanted her to go to Danville for injections and it was too far away." (Tr. 21.) Additionally,

although she later claimed that she was hospitalized on March 27, 2012, after attempting to commit

suicide for the third time, Ms. Ghaul repeatedly told hospital staff that she never attempted to

commit suicide and she only "felt depressed 'a little bit.'" (Tr. 420; see also Tr. 21.)

After highlighting many of the inconsistencies within Ms. Ghaul's own testimony and

between her claims and her medical records, as exemplified above, the ALJ drew the following

conclusions regarding the credibility of Ms. Ghaul's subjective allegations:

> After careful consideration of the evidence, I find that [Ms.
> Ghaul's] medically determinable impairments could reasonably be
> expected to cause the alleged symptoms; however, [Ms. Ghaul's]
> statements concerning the intensity, persistence and limiting effects of
> these symptoms are not entirely credible prior to August 25, 2015, for
> the reasons explained in this decision . . . .
> I find that [Ghaul] is not completely credible. Of note, one
> provider noted that [Ghaul] was filing for disability, stating that this
> "might be a hindering factor from getting full benefit from any effort
> to help with pain." Indeed, [Ghaul] appears to have offered
> inconsistent information throughout the record, which calls into
> question the veracity of her complaints. . . . [For instance, Ghaul]
> reported to an internist in June 2012 that she essentially cease[d] care
> with her pain management specialist due to transportation issues when
> in fact, the claimant was discharged after testing positive for cocaine.

> . . . Again, though the inconsistent information may not be the result of a conscious intention to mislead, the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable, which casts doubt on subjective symptom complaints and allegations.

(Tr. 27 (internal citations omitted).) As this quote demonstrates, the ALJ applied the appropriate, two-step legal standard in assessing the credibility of Ms. Ghaul's subjective allegations. Moreover, the record amply supports the ALJ's findings regarding Ms. Ghaul's inconsistent statements. Accordingly, as the court finds no exceptional grounds to the contrary and the record reflects ample evidence that justifiably discredits the trustworthiness of Ms. Ghaul's claims, the court must accept the ALJ's credibility determination. See Shifflett, 2015 U.S. Dist. LEXIS 32998, at *25 (quoting Eldeco, Inc., 132 F.3d at 1011).

## Conclusion

In short, all of Ms. Ghaul's above-noted challenges against the ALJ's RFC and step two analyses lack merit as the ALJ's relevant findings are all supported by substantial evidence in the record. Accordingly, the court affirms the ALJ's denial of Ms. Ghaul's DIB claim and the ALJ's determination that Ms. Ghaul was not disabled prior to August 25, 2015.

In affirming the final decision of the Commissioner, the court does not suggest that Ms. Ghaul's was free of all pain, discomfort, and emotional symptomatology prior to the ALJ's established onset date of August 25, 2015. Indeed, the record confirms that, prior to the established onset date of disability, Ms. Ghaul suffered from degenerative disc disease of the cervical and lumbar spine and a meniscus tear, as well as some pain and emotional dysfunction. However, it must be noted that no medical doctor has suggested that Ms. Ghaul was totally disabled prior to August 25, 2015. Importantly, the four DDS opinions, which directly supported the ALJ's findings, served as the only formal interpretations of Ms. Ghaul's functional abilities since none of her

treatment providers offered any formal opinions on her behalf. As such, the court again recognizes that the inability to work without any subjective discomfort does not itself render a claimant totally disabled. See Craig, 76 F.3d at 594-95. Based on this standard and the above discussion, it appears that the ALJ considered all of the subjective factors reasonably supported by the record in assessing the severity of Ms. Ghaul's depression and determining her RFC. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. See Laws v. Celebrezze, 368 F.2d 640, 643 (4th Cir. 1966). An appropriate judgment and order will be entered this day.

### Disposition

The court finds substantial evidence to support the ALJ's established disability onset date of August 25, 2015, and her conclusion that Ms. Ghaul did not become disabled during the period of time in which she enjoyed insured status. Accordingly, the ALJ's established onset date and the final decision denying Ms. Ghaul's DIB claim must be affirmed.

ENTER:     This  9th  day of August, 2017.

_____

United States District Judge